# Satar's Estate.

*Wills—Probate—Soldier's will—Gift—Words not testamentary in character—Act of June 7, 1917, P. L. 403.*

1. Where a soldier has insured his life in favor of his step-mother, who was living at the time with his father, and, subsequently, in a military camp, immediately before his death, says to his father, in the presence of another, "Don't worry, father. I all right. I insure myself for you, father, for ten thousand dollars," the words cannot be construed as testamentary in character, inasmuch as they do not carry any meaning to the effect that he was giving or bequeathing anything to his father.

2. The Act of June 7, 1917, P. L. 403, does not apply.

Submitted October 4, 1922. Appeal, No. 98, Oct. T., 1922, by Frank Satar, from decree of O. C. Lawrence Co., Dec. T. 1920, No. 18, reversing decision of Register of Wills admitting to probate an alleged will, in estate of Francis Satar, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Appeal from register of wills. Before EMERY, P. J. The opinion of the Supreme Court states the facts. Decision reversed. Frank Satar, legatee, appealed.

*Error assigned* was decree, quoting it.

*James A. Chambers* and *Edwin K. Logan,* for appellant.

*C. H. Akens* and *W. P. Schantz,* for appellee.

PER CURIAM, January 3, 1923:

The present case was before the court below on an appeal from an order of the register of wills, probating an alleged will; the order was reversed, and one claim-

ing, as legatee, under the alleged will, has appealed to this court.

The opinion of the court below states the relevant facts as follows: "Francis Satar entered the service of the United States in its war against Germany, and was taken to the military camp at Fort Thomas, near Newport, Kentucky, in October, 1918. At the time of induction into the service, he was living with his father, and stepmother, Mary Belle Satar, in the City of New Castle. He took out insurance from the United States Government, which provided for payments, in case of his death, of $57.50 per month, from October 16, 1918, to October 16, 1938, naming his stepmother, Mary Belle Satar, as beneficiary. While in the military camp, he became ill with pneumonia and died. In response to a telegram, his father, Frank Satar, and one Thomas Cook visited him at the camp, where Francis Satar, while suffering from his illness, and a few minutes before his death, in the presence of Frank Satar and Thomas Cook, made the following [oral] statement: 'Don't worry, father, I all right. I insure myself for you, father, for ten thousand dollars.' On July 12, 1919, this statement [reduced to writing] was probated by the register as the last will and testament of Francis Satar."

Appellant seeks to sustain the alleged will, not as within the usual requirements of the Act of 1917, P. L. 403, section 4, governing nuncupative wills, but as within section 5 of that statute, which provides, "Notwithstanding this act, any mariner being at sea, or any soldier being in actual military service, may dispose of his movables, wages and personal estate as he might have done before the making of this act."

We agree with the view of the learned president judge of the orphans' court, that the words spoken by Francis Satar to his father, relied upon by the latter as his son's will, cannot be held testamentary in character, and we affirm on the following excerpt from the opinion of the court below: "At the time the alleged words were spoken

the father and the stepmother were living together; they maintained a home for the decedent. It was from this home that he went to the training camp. He named his stepmother......as beneficiary. The words alleged to have been spoken by him do not evidence an intention to change anything he had done or to make any new or other arrangement. It is testified that he said 'Don't worry, father, I all right. I insure myself for you, father, for ten thousand dollars.' These words, under the circumstances, do not mean that the speaker intended to take away from his stepmother the right to the insurance money; they do not mean that he intended to change the beneficiary named in the policy and give or transfer the right of the money to his father......if the insurance money owing by the government is the fund referred to, then the words mean only that the speaker is telling what he [thought he] had already done, that he had already insured himself for the father, but in fact he had not. The words do not carry any meaning to the effect that he was giving or bequeathing anything to his father, then—that is, at the time he was speaking; hence, the words spoken were not a testament or will,—they were not intended to be."

The order appealed from is affirmed at cost of appellant.